Johnson, C. J. The objection taken to the indictment we conceive to be wholly untenable. The allegation that the offence was committed feloniously, unlawfully, and with malice aforethought, most assuredly implies a wilfulness to do the act; and if the term ‘i wilfully5 ’ had been expressly inserted, it could have amounted to nothing more or less than mere surplusage. The chief question involved, and one, too, that is not entirely clear of difficulty, relates to the sufficiency of the testimony to warrant the conviction. The testimony of Mrs. Xellum, the first witness introduced on the part of tbe State, is in substance, that in the spring, Á. D. 1847, she was at the house of Ethrige, the party alleged to have been injured; that whilst there, the defendant went into the house and sat down, and stated to Ethrige that he had come to get his corn, and wanted it measured, and put into the house where Ethrige was then living; that Ethrige was then sick and in, bed, and that he told the defendant that he was ready to pay the com as sopn as he could ascertain to whom he should pay it; that Bertrand and Mr. Kellum, and the defendant, were all claiming it; that the defendant then spoke to the witness in a very offensive manner, and that the offensiveness of his manner consisted in asking her, what she had to do with it; that she told him that she had nothing to do with it, but that he must go to the guardian of her children; that the defendant again told Ethrige he wanted the corn measured and put into the house, at which time the wife of Ethrige objected, and used some angry words to the defendant, and said that she could not stand it to be put out of the house; that the defendant during all the time appeared calm, and used no offensive language to Ethrige or his wife; that in the meantime Ethrige had gotten up from his bed and taken his seat near the fire; that Ethrige told defendant to go out of his house; that he did not go out, but still continued in his seat, and said nothing; that Eth rige again ordered him to leave the house, and said that, if did he not, he would make him, and at the same timo rose up, and caught his gun in one hand and the defendant by the arm with the other; that Ethrige pushed and defendant pulled; that defendant pulled Ethrige towards the door, and that in passing by a table, defendant took up a hatchet; that he then pulled Ethrige out of the door, and that, as she supposed, he then struck him with the hatchet; that some of those who were present said Ethrige was killed, that she walked to the door, and saw defendant walking off; that he turned around and threw the hatchet at Ethrige, but did not strike him; that the hatchet ivas a deadly weapon; that Ethrige then went back into the house and got another gun, but was prevented from shooting; that she saw a wound upon the neck of Ethrige, and that it was bleeding profusely, but that she did not examine it closely. The State then introduced Russell Benedict, who testified that some time in February last, defendant went to his house and inquired if he could furnish him with a pair of pistols; that he asked defendant with whom he had a difficulty, and that he stated that he had killed old Ethrige; that he then inquired into the circumstances, and that defendant stated a difficulty had taken place between Ethrige and himself, about some rent com; that he, defendant, kept his eye upon a tomahawk that was lying on the table, and that Ethrige gathered his gun, as he believed, to kill him; that Ethrige pushed him out of the house, and that as he passed the table he picked up the tomahawk, and after Ethrige had pushed him out of the door, he struck him on^the head with the tomahawk; that he then walked off a sliort distance, and saw something white on the tomahawk; that he then went back toward the door to see if Ethrige was dead, and that he intended if he was not dead to kill him; that when he went back he supposed he was dead; that he saw two men conveying him into the house; and he further stated that if he had not been dead he would have killed him. The witness also stated that this happened in Conway county; that defendant said he wanted the pistols for Davenport, a step-son of Ethrige, who, as he understood, was carrying a gun for him. This is the substance of all the testimony adduced upon the trial of the cause. The indictment is for an assault with the intent to commit murder. The testimony to sustain the charge must have been such as to have warranted a conviction for the crime of murder itself, in case the defendant had succeeded in carrying out and effectuating his intention. Malice was therefore an indispensable requisite. The defendant’s own version of the whole affair was introduced by the State, and under a well settled rule of law, all that he said on that occasion should have been taken as well for as against him. There is nothing in his statement that has the remotest tendency to prove that he went to the house of Ethrige for the purpose of creating a difficulty with him, much less to take away his life. He stated that the difficulty originated in regard to some rent corn which he claimed from Ethrige, and that during the controversy, he kept his eye upon the tomahawk that lay upon the table, that Ethrige gathered his gun as he believed to kill him, and that Ethrige pushed him out of the door, that as he passed the table he picked up the tomahawk and that after he had pushed him out of the door he struck him. True it is, that Ethrige had ordered him a second time to leave the house, and that he did not do so but continued in his seat. It is not in evidence that he had committed any outrage in the house, but on the contrary that he had entirely abstained from the use of offensive language either towards Ethrige or his wife. It is doubtless the right of one individual to order another to leave his house, whenever, and from such motives as may be satisfactory to himself; yet he has no right to use violence for that purpose, until he first made a fair trial of gentle means. He is authorized to lay his hands upon him softly, and if he then resist he is warranted in the use of force. The evidence is that, at the same time Ethrige gave the order to leave the house, he seized his gun in one hand and the defendant with the other and commenced pushing him, and eventually succeeded in getting him out. The evidence would not warrant the inference that the defendant intended to use the hatchet unless it were necessary to repel force. We think upon a view of the whole testimony, that in case death had ensued, the-defendant could not have been guilty in the eye of the law of a higher offence than that of manslaughter. The fact of Ethrige having first violated the law by laying violent hands upon the defendant, without first resorting to gentle means, would, without a doubt, have reduced the offence from murder to that of manslaughter. It is also a question of much doubt, whether any venue was established on the part of the State. Benedict, the only witness, who uttered a single syllable upon that branch of the case, after stating the facts as detailed to him by the defendant, said that this happened in Conway county. Whether he had reference to the facts themselves, or the interview between himself and the defendant, it is somewhat difficult to determine. But as he did not pretend to relate the facts from his own knowledge, nor state that the defendant said they occurred in Conway county, the inference is'strong and almost conclusive, that, when he said this happened in Conway county, that he referred to the conversation between the defendant and himself, and not to the facts so confessed. For these reasons, we are clear, that the cause ought to be reversed. Judgment reversed. Note. — While this case was pending in this court, on petition of a majority of the citizens of Conway county, his Excellency, Governor Drew, pardoned the defendant. Reporter.